WILLIAM W. BISHOP, Appellant, v. LEVI NEWTON et al., Appellees.

APPEAL FROM KANE.

One party to a contract cannot complain until he has put his adversary in default by a substantial performance of the contract on his part, nor until a failure or refusal to perform by the other.

Where a party contracts to give a title free from incumbrances, the purchaser is not bound to pay his money and receive a deed, while incumbrances exist against the property.

Where A contracted to sell land to B, for which the latter paid down $1,000, and was to pay $2,000 more by a day named, or within fifteen days thereafter, or forfeit what he had paid, and satisfy a certain mortgage, except the interest for a named year, which A was to pay; B being in default by not having paid the $2,000 by the day named, within fifteen days thereafter A sold the land to other parties: Held, that as A was himself in default, and that B performed a part of his contract and had within a reasonable time, offered to perform entirely on his part, that on a bill filed for that purpose, A should be made to convey to B.

The contract between A and B was of record, and was notice to all other persons; and whoever dealt with A in relation to those lands, was bound to take notice of it.

THIS was a proceeding in chancery; the bill states that on the 29th day of September, A. D. 1855, the complainant and defendant Newton entered into the following agreement:

KNOW ALL MEN BY THESE PRESENTS, That Levi Newton, of the county of Kane, and State of Illinois, is held and firmly bound unto William W. Bishop, of the county of Worcester, and State of Massachusetts, party of the second part, in the penal sum of eighteen thousand dollars, to be paid unto the said party of the second part, his heirs, executors, and administrators and assigns, to which payment well and truly to be made, I bind myself, my heirs, executors and administrators and every of them, firmly by these presents: Sealed with my seal, this 29th day of September, A. D. 1855.

The condition of the above obligation is such, that whereas, the above bounden Levi Newton has this day sold to the said party of the second part, his heirs and assigns, for the sum of twelve thousand dollars, payable as follows: One thousand down, and two thousand on the first day of January, A. D. 1856, and the other nine thousand to be paid to one Leonidas Doty, according to a mortgage made on the 14th day of October, 1854, which he is to assume and pay, except the interest on said mortgage for the year 1855 — Deed to be made on the second payment being made, subject to said mortgage — all his right, title and interest to the following described lot or parcel of land, to wit: The land conveyed to said Levi Newton, by deed from Leonidas Doty and wife, on the 14th day of October, 1854, and acknowledged the 4th day of December, 1854; the description of lands which is fully set out in said deed, and which said description is made by agreement a part of this bond. It is also agreed that said Newton is to get it surveyed within one year, and is not to cut or sell any standing timber on said land, and have only the right to take firewood for one fire from that which is down; also then give possession of the premises fully. It is also agreed that if said Bishop fails to make pay-

ment within fifteen days after the first day of January, 1856, he forfeits what he has paid, and all rights under this bond. Upon the payment of said sum being made at the time and in the manner aforesaid, the said Levi Newton, his heirs, executors and assigns, covenant and agree to and with the said party of the second part, his heirs, executors, administrators and assigns, to execute a good and sufficient deed of conveyance, in fee simple, free from all incumbrance, with full and proper covenants of warranty, for the above described premises, except said mortgage above mentioned. Now, upon payment being made as aforesaid, if the said Levi Newton shall well and truly keep, observe and perform the said covenants and agreements herein contained on his part, then this obligation to be void, otherwise to remain in full force and virtue.

Signed,        LEVI NEWTON. ·[L. S.]<br>WM. W. BISHOP. [L. S.]

That the above bond was recorded in the recorder's office, in Kane county, on the 29th day of September, 1855.

That on the day the bond was executed, complainant paid defendant Newton $1,000, which was indorsed on the bond.

That between the first and fifteenth of January, 1856, complainant told defendant that he would not receive funds from the East as he expected, in time to make payment by the 15th of January, 1856, but if defendant required payment by that time, he would borrow the necessary amount and pay him; defendant replied, " a few days will make no difference."

That on the 5th day of February, 1856, being twenty days after the time mentioned in the bond when the payment should be made, complainant called on defendant and told him he was then ready to make payment and receive his deed, when defendant informed complainant that he was too late, as he had sold said premises — defendant refused to accept payment and make a deed to complainant.

That defendant Newton, on the 5th day of February, 1856, conveyed the land in question to defendants Goudy, for $12,750, being $750 more than the same was sold to complainant for.

That defendant Newton refused to refund the sum of $1,000, which he had received on said bond. That complainant was in Batavia, where defendant Newton resided, from the 15th of January till the 5th of February, 1856, which fact was known to defendant Newton. That the sale to defendants Goudy was purposely concealed from complainant for the purpose of defrauding him.

That by the terms of the bond, defendant Newton was to pay the interest on the mortgage, mentioned therein, for the year 1855, which he had not done at the time he sold to the Goudys. That the interest aforesaid amounted to the sum of $1,000, which was a lien on said premises by virtue of the mortgage.

That complainant repeatedly offered to make payment, and upon refusal by Newton to accept the same, has repeatedly demanded a return of the said sum of $1,000.

And prayed that the court would vacate the deed from Newton to defendants Goudy, decree a specific performance against Newton, and for such further relief as to the court might seem equitable and just.

The answer admits the execution and recording of the bond, and the payment of $1,000, as charged in the bill. That defendant Newton knew complainant was in Batavia from the 15th day of January to the 5th of February, 1856—denies that he agreed to extend the time of payment beyond the 15th day of January, 1856. Admits that complainant told him, Newton, on the 5th of February, 1856, that he was then ready to make payment and receive a deed according to the agreement, that he then told complainant he was too late, as he had sold the premises. Admits he sold to defendants Goudy for $12,750. Admits that the interest due on the mortgage to Doty for the year 1855, amounted to $630, and that the same had not been paid on the 5th of February, 1856, the date of the sale to the Goudys, but avers as an excuse, that early in December, 1855, he wrote to complainant, asking him to stop at Buffalo, N. Y., and pay said Doty $1,000, or deposit that sum in a bank to his credit. That he received an answer to said letter, declining to comply with his request. Admits he told complainant, after the sale to the Goudys, that he should keep the $1,000 he had received, and that complainant told him he would have it or sink another thousand with it.

The defendants pleaded, that on the 18th day of March, 1856, complainant commenced an action at law for the recovery of the sum of $1,000 paid on the bond.

To which there is a general replication.

The decree dismissing the bill was rendered by I. G. WILSON, Judge.

T. C. MOORE, and LELAND & LELAND, for Appellant.

J. H. MAYBORNE, for Appellees.

WALKER, J. This was a bill in chancery, filed by complainant against defendants, for the specific performance of a contract entered into between complainant and defendant Newton, on the 29th day of September, 1855. By the agreement, Newton sold to Bishop several tracts of land, for the sum of twelve thousand dollars. Bishop, at the time of the sale and the entering into the written agreement, paid to Newton one thousand

dollars, and agreed to pay him two thousand more on the first first day of January, 1856, and to assume and pay a mortgage on the lands for nine thousand dollars, except the interest, for the year 1855, which mortgage was given by Newton to one Leonidas Doty, on the 14th day of October, 1854. Newton on his part covenanted and agreed that upon the payment of the two thousand dollars at the time and in the manner specified, to make, execute and deliver to Bishop a good and sufficient deed of conveyance in fee simple, free from all incumbrance, with full and proper covenants of warranty for the premises, except the mortgage to Doty. It was further agreed, that in case Bishop should fail to make payment within fifteen days after the first day of January, 1856, he should forfeit what he had already paid, and all rights under the agreement. Bishop failed to make payment by the fifteenth day of January, 1856. Newton, without having paid the interest on the Doty mortgage for the year 1855, or having tendered a deed to Bishop, on the fifth day of February, 1856, sold and conveyed the same lands to William A. Goudy and Franklin J. Goudy, for twelve thousand seven hundred and fifty dollars, and on the same day, Bishop called on Newton and offered to pay the two thousand dollars due on the first of January, previous, when Newton informed him that he was too late, as he had sold to the Goudys. The contract for the sale by Newton to Bishop was duly recorded in the proper office on the day of its execution. These facts all appear from the bill and answer. The cause was tried in the Circuit Court on the bill, answers and replication, without evidence, when the bill was dismissed, and the cause is brought to this court by appeal, to reverse the decree of the Circuit Court.

The first question presented for our consideration in this case is, whether Newton had the right to declare the forfeiture and sell the premises to the Goudys.

Courts of equity always incline to relieve against penalties and hard bargains of this character, and will hold the party seeking such an advantage to a strict compliance with the contract on his part, before he will be permitted to enforce such a forfeiture. We are, then, to examine and see whether Newton had performed his part of the contract at the time and in the manner required by the agreement; and, if he has, then he had the right to insist upon enforcing the forfeiture when Bishop failed to make payment; but, if he was himself in default at that time, he had no such right. This court laid down this principle in the case of *Brown* v. *Cannon*, where it is said: One party to a contract cannot complain of the other until he has put his adversary in default by a substantial performance of

the contract on his part ; and a failure or refusal to perform by the other.  5 Gil. R. 174.  By the terms of their agreement, Bishop was to pay the further sum of two thousand dollars on the first of January, 1856, and to assume the payment of the Doty mortgage, except the interest for the year 1855.  This they had expressly provided he was not to pay.  It was then left for Newton to discharge.  Newton had covenanted that, upon the payment of the two thousand dollars at the time and in the manner specified, he would convey the lands to Bishop by good and sufficient deed in fee simple, free from all incumbrances except the Doty mortgage.  The conveyance of the lands freed from such incumbrances was, by the contract, a concurrent act with the payment of the money.  Newton was bound by the agreement to be in a condition to so convey, by the first day of January, 1856.  This interest was undoubtedly a lien and incumbrance on the land to the amount of $630, which was then due, and for which Doty could subject the lands to its payment, by foreclosing the mortgage.  This interest was not paid on the first of January, nor until after the sale to the Goudys.  Newton was still in default, when Bishop offered to pay the money, and demanded the conveyance.  But, if this was not the true construction of this contract, still the law would not compel Bishop to pay his money and receive the deed, while incumbrances existed against the property, when he had contracted for a title free from such incumbrances.  This court, in the case of *Brown* v. *Cannon*, say, that a person who has bargained for a good title will not be compelled to take one subject to suspicion ; the title must be free from suspicion.  And in Sugden's treatise on Vendors, the rule is stated to be that where an incumbrance is discovered to exist previously to the execution of the conveyance and payment of the purchase money, the vendor must discharge it, whether he has or has not agreed to covenant against incumbrances, before he can compel the payment of the purchase money.  Sugden on Vendors, 553.

We think these principles are decisive, that Newton had no right to insist upon the forfeiture while he was himself in default.

Then has complainant a right to insist upon a specific performance of the agreement.  This branch of equity jurisdiction is regulated, to a considerable extent, by a sound legal discretion.  The rule governing courts was stated by Chief Justice MARSHALL to be, that when a bill is exhibited by a party who is himself in fault, the court will consider all the circumstances of the case, and decree according to those circumstances ; and that a condition always entitled to great weight is, that the contract, though not fully executed, has been in part performed ; 6

Wheaton R. 528. And, in a subsequent case, the same court lay down the rule that time may be of the essence of the contract for the sale of property. It may be made so by the express stipulations of the parties, or it may arise by implication, from the very nature of the property, or the avowed objects of the seller or the purchaser. And even when time is not thus either expressly or impliedly of the essence of the contract, if the party seeking a specific performance has been guilty of gross laches, or has been exceedingly negligent in performing the contract on his part, or if there has been, in the intermediate period, any material changes of circumstances, affecting the rights, interests or obligations of the parties; in all such cases, a court of equity will refuse to decree a specific performance, upon the plain ground that it would be inequitable and unjust. But, except under circumstances of this nature, time is not treated by courts of equity as of the essence of the contract, and relief will be decreed to the party who seeks it, if he has not been grossly negligent, and comes within a reasonable time, although he has not strictly complied with the terms of the contract. *Taylor* v. *Longworth et al.*, 14 Peters R. 172.

The complainant has brought himself clearly within the principles of these rules. He, in part performance of the contract, paid, on the purchase, one thousand dollars. It is true he did not pay or offer to pay the next installment on the day, but he did offer to pay twenty days afterwards. While this is not a strict compliance, it is not gross laches or unreasonable delay, when it is remembered that Newton was himself in default, and not in a position to require payment. And we are, therefore, of the opinion that his conduct was such as entitles him to the relief sought.

It was urged on the argument that complainant had, previously to filing his bill, brought a suit at law for the recovery of the purchase money paid on the agreement; and had thereby rescinded the contract, and barred his right to relief in this proceeding. In answer to this objection it is only necessary to remark, that, if this be true in point of fact, the record contains no such evidence. It only appears from Newton's plea and unsworn answer. It is new affirmative matter, set up as a defense, and should have been proved to entitle it to consideration by the court.

The contract was duly recorded in the proper office on the day it was executed, and became notice to all the world. And the Goudys were chargeable with notice and took the property subject to all the equities with which it was charged. They acquired no other or better title than Newton then held, and cannot be heard to object to a specific performance of the agree-

ment.   From the circumstances of the case, then, in every point of view, we are satisfied that complainant is entitled to the relief sought.   And the decree of the Circuit Court is reversed, and the cause remanded, with instructions to that court to enter a decree, for a specific performance of the contract, that complainant pay into court the two thousand dollars, with interest from the first day of January, 1856.   That defendant Newton have leave to withdraw it upon delivering a deed of conveyance with the covenants stipulated for in the agreement conveying the premises to complainant, and upon filing a receipt from Doty for the interest on his mortgage for the year 1855 ; and if he shall fail or refuse to deliver such deed and to file such receipt within a reasonable time to be given for that purpose, that the master in chancery, or a commissioner, be appointed for that purpose, to be empowered and required, on behalf of the said defendants, to convey the premises to said complainant, with covenants by defendant Newton according to [his agreement, and with covenants by the said William A. Goudy and Franklin J. Goudy against their acts, and to pay the interest on the Doty mortgage for the year 1855 out of the deposit, unless the same has been already paid ; and, that when such deeds of conveyance shall have been delivered, that Newton be allowed to receive the balance of the deposit, after paying the costs of the court below.

And it is ordered that complainant pay one-half of the costs of this court and the defendants pay the other half.

*Decree reversed.*