CHICAGO, BURLINGTON & QUINCY RAILROAD COMPANY V. HENRY C. COCHRAN.

FILED NOVEMBER 8, 1894.    NO. 5448.

**Contracts:** ACTION FOR BREACH.    One who refuses to perform the conditions imposed upon him by the terms of a contract cannot recover for a breach thereof by the other party.

ERROR from the district court of Lancaster county. Tried below before HALL, J.

*T. M. Marquett* and *J. W. Deweese*, for plaintiff in error, cited: *Delaney v. Linder*, 22 Neb., 280; *Mateer v. Missouri P. R. Co.*, 16 S. W. Rep. [Mo.], 839; *Hinkle v. Minneapolis & St. L. R. Co.*, 31 Minn., 434; *Gulliher v. Chicago, R. I. & P. R. Co.*, 13 N. W. Rep. [Ia.], 431; *Pennsylvania R. Co. v. Shay*, 82 Pa. St., 202; *Snider v. Adams Express Co.*, 63 Mo., 383; *Wallace v. Chicago, St. P., M. & O. R. Co.*, 25 N. W. Rep. [Ia.], 772; *Gould v. Cayuga County Nat. Bank*, 86 N. Y , 84; *Glenn v. Statler*, 42 Ia., 109; *Butman v. Hussey*, 30 Me., 263; *Moorman v. Collier*, 32 Ia., 138; *Belger v. Dinsmore*, 51 N. Y., 170; *Guldager v. Rockwell*, 24 Pac. Rep. [Col.], 556; *First Nat. Bank, Barnesville, O., v. Yocum*, 11 Neb., 332; *East Tennessee, V. & G. R. Co. v. Hayes*, 10 S. E. Rep. [Ga.], 351; *Doane v. Lockwood*, 115 Ill., 490; *Oswego Starch Factory v. Lendrum*, 57 Ia., 573; *Chapman v. Chicago & N. W. R.*

*Co.*, 26 Wis., 303; *Chicago & G. E. R. Co. v. Dane*, 43
N. Y., 242; *Bolles v. Sachs*, 33 N. W. Rep. [Minn.], 864;
*East Line & R. R. R. Co. v. Scott*, 10 S. W. Rep. [Tex.],
99; *Harper v. Hassard*, 113 Mass., 187; *Coffin v. Landis*,
46 Pa. St., 431; *Franklin Mining Co. v. Harris*, 24 Mich.,
115; *Wilkinson v. Heavenrich*, 26 N. W. Rep. [Mich.],
140; *Stiles v. McClellan*, 6 Col., 89; *Warner v. Texas &
P. R. Co.*, 54 Fed. Rep., 923.

*W. S. Hamilton, contra,* cited: *East Tennessee, V. & G. R.
Co. v. Staub*, 7 B. J. Lea [Tenn.], 397; *Moore v. Chicago,
B. & Q. R. Co.*, 65 Ia., 505; *Jessup v. Chicago & N. W. R.
Co.*, 48 N. W. Rep. [Ia.], 77 ; *Wells v. Alexandre*, 15 L. R.
A. [N. Y.], 218; *Smith v. Morse*, 20 La. Ann. 220; *Giles
v. Bradley*, 2 Johns. Cas. [N. Y.], 253; *Seddon v. Rosen-
baum*, 9 S. E. Rep. [Va.], 326; *Michie v. The Governor*, 4
Humph. [Tenn.], 486; *Howard v. Daly*, 19 Am. Rep.
[N. Y.], 285; *Tarbox v. Hartenstein*, 4 Bax. [Tenn.], 78 ;
*Ream v. Watkins*, 72 Am. Dec. [Mo ], 283; *Cake v. Potts-
ville Bank*, 2 Am. St. Rep. [Pa.], 600.

Post, J.

The plaintiff below (defendant in error) recovered in an
action against the defendant below in the district court for
Lancaster county, and which judgment is presented.to this
court for review by the petition in error of the defendant
railroad company.   In his petition the plaintiff below al-
leges that on the 11th day of May, 1888, while in the serv-
ice of the defendant company, and by means of its negli-
gence and default, he suffered serious personal injuries;
that on the 3d day of September following he made a set-
tlement with said defendant, whereby, in consideration of
the sum of $100 in hand paid, and the promise of the
latter to furnish him employment for the remainder of
his life, or so long as he desired, with wages sufficient for
the support of himself and family, he released and ac-

quitted the defendant from any and all claim for damage on account of its alleged negligence; that in pursuance of said agreement he served the defendant in the capacity of clerk in the yardmaster's office, and as locomotive fireman, until March 12, 1891, at which time, in consequence of a reduction in the hours of labor, his daily wages were reduced from $1.50 to $1.35 per day. He thereupon protested against such reduction, and was promised other employment, with wages adequate to the needs of his family, but which promise the defendant has wholly failed and neglected to fulfill. There is a further allegation in the following language: "And plaintiff says that said defendant, well knowing the premises and the validity of its aforesaid agreement, and recognizing the same and plaintiff's rights thereunder, yet wrongfully and unlawfully intending to cheat and defraud the plaintiff out of his just rights and to injure him, so conducted itself toward the plaintiff as to make his duties and labors burdensome and onerous and his remuneration insufficient, for the purpose of annoying the plaintiff and disgusting him with his employment, and for the purpose of thereby ridding itself of plaintiff and compelling him, by its aforesaid conduct, to leave defendant's service and to seek employment elsewhere; and that the defendant, pretending to carry out the agreement aforesaid, actually and in fact endeavored to freeze plaintiff out of its, said defendant's, service." The defendant by its answer admits that the plaintiff was injured while in its service as alleged, and that a settlement was had between the parties on the 3d day of September, 1888, but alleges that the $100 thereby paid to the plaintiff was in full of all demands arising out of his alleged injury. It admits that the plaintiff subsequently served it in the capacities named, but alleges that such employment was voluntary on its part and not in pursuance of any agreement, and alleges that the plaintiff left its service voluntarily and without cause. Accompanying

the answer is the written evidence of the alleged settlement, all of which, beginning with the word "received," except the amount, name, and residence of the plaintiff, as shown below, being on one of the defendant's printed forms.

"THE CHICAGO, BURLINGTON & QUINCY R. R. CO.,
"GRANTEE AND ASSIGNEE OF
"THE BURLINGTON & MISSOURI RIVER R. R. CO. IN
NEBRASKA.

"To H. C. Cochran, Dr.,

"Address, Ravenna, Neb.

"1888.   For personal injuries received while on duty as locomotive fireman at Ravenna, Neb., May 11, 1888.............................................. $100

"Cochran in attempting to get on his engine missed the engine steps and slipped in such a way that right foot was caught and run over by trucks of engine tender, cutting toes so as to necessitate their amputation, and, later, amputation of foot back to instep.

"Casualty No. 2069.

"Approved:              A. S. WIGGINS,
                        "Ass't Auditor.

"Approved:              T. E. CALVERT.

"Received of the Chicago, Burlington & Quincy R. R. Company, grantee and assignee of the Burlington & Missouri River R. R. Co. in Nebraska, one hundred dollars, in full payment of the above account.   In consideration of the payment of said sum of money, I, H. C. Cochran, of Ravenna, in the county of Buffalo and state of Nebraska, hereby remise, release, and forever discharge the said company of and from all manner of actions, causes of action, suits, debts, and sums of money, dues, claims, and demands whatsoever, in law or in equity, which I have ever had or now have against said company by reason of any matter, cause, or thing whatever, whether the same arose upon contract or upon tort.

"In witness whereof, I have hereunto set my hand this 3d day of September, 1888.

"$100.                                    H. C. COCHRAN."

Numerous questions are presented touching the merits of the controversy, including the power of the superintendent to bind a company by an agreement such as alleged, and whether an agreement so indefinite can be made the foundation of an action at law; but since, in our judgment, there is an evident failure of proof of an essential allegation of the petition, it is unnecessary to further notice the questions above mentioned. It is shown by the testimony of the plaintiff that he remained in the service of the company until the 10th or 11th day of April, 1891, and that within a few days thereafter he called upon the superintendent, Mr. Calvert, and protested against the reduction of wages, and requested more lucrative employment. There was at that time some talk about the ability of the plaintiff to do clerical work, and he was requested by Mr. Calvert to submit a specimen of his penmanship, which he did, by a paper designated as a sample, bearing date of April 11th. On Saturday, April 25, Mr. Bignell, division superintendent, by direction of Mr. Calvert, addressed to the plaintiff a letter in the following words:

"LINCOLN, April 25, 1891.

"*Mr. H. C. Cochran, 843 N. 12th St., City*—DEAR SIR: You will please report to Mr. Scott, agent, Lincoln, at 7:30 Monday morning. I have requested him to give you a position, and to do this he has to dispense with the services of a good man who has been in the service some time. I shall expect you to fill the position equally well as your predecessor.

"Yours truly,                          E. BIGNELL."

The foregoing letter was for some reason not posted until Monday morning following, and delivered by carrier the next day, some twenty-seven hours after the time plaintiff was requested to report for duty. It is conceded that he

never reported for work or otherwise communicated with Mr. Scott, the agent named. It is also shown that he was at the date of said letter employed by the Lincoln Street Railway Company, in whose service he remained until the month of October following. There is no doubt of the good faith of Mr. Calvert and his desire to provide employment for the plaintiff, and no claim to the contrary is made in the brief of the latter. Mr. Scott, who testified for the defendant, fully corroborated Mr. Calvert, and testified that he had, in accordance with instructions from the superintendent, provided a position for the plaintiff as billing clerk in office of the witness at the same wages paid other employes therein, and which was reserved for him for a week or more. The law exacts good faith from both parties to a contract. The plaintiff was under no less obligation to render the service than the defendant was to provide employment for him. Assuming what is not proved, viz., that the purpose of the defendant company was to compel the plaintiff to abandon the service by continued acts of oppression and annoyance, that fact should not entitle him to recover for a breach of the contract unless he was himself ready and willing to discharge the obligations thereby imposed upon him. The fact that notice of his appointment was delayed one day will not justify his refusal to accept the proffered position. It was said by LAKE, J., in *Reynolds v. Burlington & M. R. R. Co.*, 11 Neb., 186, that a plaintiff who is himself in inexcusable default, and who shows no desire or willingness to perform his part of it, is in no position to complain or seek damage for its non-performance by the other; and the same principle is recognized in *Walter v. Reed*, 34 Neb., 544, and *Lexington Milling Co. v. Neuens*, 42 Neb., 649, decided at the present term.

The irresistible conclusion from the evidence is that the plaintiff below was guilty of the first breach of the contract, and that his default was without justification or

excuse.   It follows that the judgment must be reversed and the cause remanded.

REVERSED AND REMANDED.